UNITED STATES of America,
Plaintiff–Appellee,

v.

Jaime Leon GOMEZ–NORENA,
Defendant–Appellant.

No. 89–50192.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1990.

Decided July 12, 1990.

Elizabeth N. Brancart, Orange, Cal., for defendant-appellant.

Ellyn Marcus Lindsay, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HUG, SCHROEDER and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Jaime Leon Gomez–Norena ("Gomez") appeals his conviction, following a jury trial, for possession of cocaine with intent to

498

distribute, in violation of 21 U.S.C. § 841(a)(1) (1988). We affirm.

I

Late in the afternoon of Friday, January 22, 1988, Avianca Airlines Flight Number 80 from Bogota, Colombia touched down at Los Angeles International Airport. Near the passenger arrival gate, and behind a screening podium, stood United States Customs Inspector Sergio Espinoza. As a "rover screener," Espinoza had to evaluate each disembarking passenger according to an official "drug courier profile." Espinoza's scanning eyes fixed on Gomez, who walked aimlessly down the concourse with a carry-on bag in his hand and a "dumbfounded" look on his face. After failing to attract Gomez's attention in English, Espinoza used Spanish to hail Gomez over to the podium.

A quick review of Gomez's ticket, passport, and customs declaration enabled Espinoza to draw several inferences. First, Gomez had begun his trip from the reputed drug capital, Medellin, Colombia. Second, Gomez had paid for his ticket with cash. Third, Gomez had an Australian visa and would be in the United States only for the three hours before his flight to Sydney. Fourth, the 23-year-old Gomez was a newcomer to international travel. Fifth, Gomez had checked only one piece of baggage.

Consequently, Inspector Espinoza made a coded notation of his suspicions on Gomez's customs declaration. He then told Gomez that he would have to visit the Immigration Office on the first level of the airport before he could go on to Sydney. As Gomez hurried away to make this stop, Espinoza called over Senior Customs Inspector, Sal Zito, Inspector Harold Little, and other members of the customs roving team. He told them to "watch out for Mr. Gomez" because he fit the drug courier profile.

Inspector Little met Gomez at the second customs inspection station. He searched both Gomez's carry-on bag and suitcase. He found clothing and some papers, including a letter of acceptance from the Austra-

lian College of English. Little then asked Gomez if he owned and packed the suitcase. Gomez answered, "Yes." Finding the small suitcase disproportionately heavy, Inspector Little began a "scratch test," rubbing his hands on the inside and outside of the suitcase at the same time, in an effort to detect a hidden lining. The test confirmed Little's suspicions. He immediately called Senior Inspector Zito over to his work station. After Little related his suspicions, Zito passed the suitcase under a nearby x-ray machine and discovered a double compartment.

At that point, Inspectors Little and Espinoza ushered Gomez to the Customs search room. Espinoza's pat-down search revealed no weapons or contraband. Inspector Little drilled through the side of Gomez's suitcase and discovered two plastic bags containing roughly two kilograms of cocaine.

Gomez was immediately arrested and strip searched. About one hour later, Special Agent Paul Pace of the Drug Enforcement Agency ("DEA") arrived on the scene. Inspector Espinoza acted as an interpreter. Despite receiving a *Miranda* warning in Spanish, Gomez elected to speak. Contrary to his former statement to Inspector Little, Gomez told Pace that he did not know about the hidden compartment because the suitcase belonged to a stranger at the Bogota airport who had given him $1000 to carry it from Bogota to Sydney. He added that he had forgotten the stranger's name.

A jury convicted Gomez for possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Gomez argues on appeal that the district court improperly admitted testimony regarding the drug courier profile, and expert testimony regarding his intent to distribute the cocaine.

II

Gomez first challenges the admissibility of Inspector Espinoza's testimony concerning his statements to the other Customs inspectors that Gomez fit the drug courier

profile. Because the objections raised at trial are relevant to our standard of review, we reproduce the testimony in full:

Prosecutor: What did you tell Inspector Zito or Inspector Little or any of the others about—

Defense: Objection. Calling for hearsay.

Prosecutor: Your Honor.

The Court: Ladies and gentlemen. I permit this, which the law says I can, but only on the question of what was in the inspector's—those ones he told whatever he told to—mind at the time they carried on their activities.

Now it is hearsay, the defendant wasn't there, but we do permit hearsay to be passed from one law enforcement officer to another, and this is appropriate, so the objection is overruled.

With that instruction that you can consider only as to what the inspectors had in their mind when, and if, anything further happened in the presence of the defendant. With that instruction, objection overruled.

Prosecutor: Inspect[or] Espinoza, what did you say to the other inspectors about the defendant?

Espinoza: I instructed the inspectors to watch out for Mr. Gomez.

Prosecutor: Did you give them any particulars?

Espinoza: Yes, I did. I told them that in the past that we've intercepted cocaine couriers with the same—

Defense: Objection, your Honor. Move to strike. Rule 4[0]4(b) objection.

The Court: Same ruling. Overruled. Let's have a continuing objection. Continue. Overruled.

Prosecutor: Thank you, your Honor. I would appreciate it.

The Court: My instruction to the Jury, which I gave you, is to only determine what the inspectors who may have had further contact with the defendant,

and we'll see about that. Otherwise, I'll strike it. But only with respect to what they had in their mind when they had further contact with the defendant. I'm talking about the people [Espinoza] talked to. All right? Got it? With that instruction, objection overruled.

Prosecutor: What did you tell them, Inspector?

Espinoza: I told them to look out after Mr. Gomez, because in the past we've had the same type of narcotics couriers with the same MO that Mr. Gomez had: Cash ticket, in transit, in transit without a [United States] Visa, to Australia, with one or more pieces of checked luggage.

Prosecutor: You said 'MO'; what did you mean by that?

Espinoza: The same—his profile, same cash ticket.

The Court: MO, Modus Operandi?

Espinoza: Yes.

The Court: That's what he asked you.

Prosecutor: What did you mean when you said with the same MO?"

Espinoza: Well, in the past we've had the same type of narcotics carriers coming from Colombia.

Prosecutor: Going in transit to Australia?

Espinoza: Yeah.

Reporter's Transcript at 40–42.

### A

██ Gomez's central claim on appeal is that Espinoza's testimony regarding the drug courier profile was unfairly prejudicial and thus inadmissible under Federal Rule of Evidence 403.[1] However, he has not properly preserved that claim for review. As the transcript indicates, Gomez objected on two grounds: (1) inadmissible hearsay, *see* Fed.R.Evid. 802, and (2) improper character evidence, *see* Fed.R.Evid. 404(b).

---

1. **Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time**
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

A party challenging the admission of evidence must timely object and state the specific grounds for his objection. Fed.R. Evid. 103(a)(1). This rule serves to ensure that "the nature of the error [is] called to the attention of the judge, so as to alert him to the proper course of action and enable opposing counsel to take corrective measures." Advisory Committee's Note to Rule 103(a), 56 F.R.D. 183, 195 (1972). *See generally* McCormick on Evidence, § 52, at 126 (E.W. Cleary ed. 1984) [hereinafter McCormick] ("If the administration of the exclusionary rules of evidence is to be fair and workable the judge must be informed promptly of contentions that evidence should be rejected, *and the reasons therefor.*") (emphasis added).

Thus, a party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, *see United States v. Holland,* 880 F.2d 1091, 1094 (9th Cir.1989); *United States v. McQuisten,* 795 F.2d 858, 865 (9th Cir.1986); *United States v. O'Brien,* 601 F.2d 1067, 1071 (9th Cir. 1979), but also by making the *wrong* specific objection, *see, e.g., ESCO Corp. v. United States,* 750 F.2d 1466, 1469–70 (9th Cir. 1985) (objection to testimony on basis of Rule 802 precludes appellant from challenging it on basis of Rule 408); *United States v. Arias,* 575 F.2d 253, 254–55 & n. 2 (9th Cir.) (objection to testimony on basis of Rule 1002 precludes appellant from challenging it on grounds that it was not made under oath), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *see generally* 1 Wigmore Evidence § 18, at 828 (Tillers rev. 1983) ("A specific objection overruled will be effective to the extent of the grounds specified, and no further. An objection overruled, therefore, naming a ground which is untenable, cannot be availed of because there was another and tenable ground which might have been named but was not.") (footnote omitted); 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 103[02], at 103–24–25 (1989) ("Rule 103 adopts Wigmore's position that a specific objection made on the wrong grounds and overruled precludes a party from raising a specific objection on other, tenable grounds on appeal.") (footnotes omitted).

Because Gomez failed to make a Rule 403 objection below,[2] we review the admission of the drug courier profile testimony for plain error. *See* Fed.R.Evid. 103(d); *United States v. Morris,* 827 F.2d 1348, 1350 (9th Cir.1987), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988).

---

**2.** This failure was not cured by the district court's grant of a "continuing objection" after Gomez's attorney objected on the grounds of Rule 404(b). A continuing objection serves only to obviate repeated objections to evidence admitted within the scope of the court's specific evidentiary ruling. *See, e.g., United States v. Ladd,* 885 F.2d 954, 958 (1st Cir.1989) (party may argue violation of Rule 403 on appeal because it posited a continuing objection on the basis of that particular rule); *United States v. Verrusio.* 803 F.2d 885, 893 (7th Cir.1986) (continuing objection on hearsay grounds would preserve appeal of admission of subsequent hearsay statements); *United States v. Marshall,* 762 F.2d 419, 425 (5th Cir.1985) (overruling of timely specific objection amounted to continuing objection, thereby preserving error for "subsequent evidence admitted within the scope of the ruling") (citing 21 Wright & Graham, Federal Practice and Procedure, § 5037 at 191–92 (1977)); *United States v. Gillette,* 189 F.2d 449, 453 (2d Cir.) (party may not rely on continuing objection lodged on one evidentiary ground to argue a different ground on appeal), *cert. denied,* 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951); *see generally* McCormick, § 52, at 132 (implying that continuing objection "extends to all similar evidence subject to the same objection"). *Cf. United States v. Blackman,* 897 F.2d 309, 315 (8th Cir.1990) (continuing objection as to all evidence sought in pretrial motion preserves issue of propriety of suppression for appellate review).

The purpose of a continuing objection is simply to provide the district court with an opportunity and reason to reconsider its prior evidentiary ruling. *Daskarolis v. Firestone Tire and Rubber Co.,* 651 F.2d 937, 940 (4th Cir.1981). *See also United States v. Rivera–Santiago,* 872 F.2d 1073, 1083 (1st Cir.) (absent a continuing objection, parties can expect court to reconsider earlier ruling only by making repeated objections on same grounds), *cert. denied sub nom., Castro–Poupart v. United States,* —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989), *and Romero–Lopez v. United States,* —— U.S. ——, 110 S.Ct. 105, 107 L.Ed.2d 68 (1989). *Cf. Squyres v. Hilliary,* 599 F.2d 918, 921 (10th Cir. 1979) (continuing objection serves to warn court of *future* evidentiary problems).

Thus the continuing objection in this case served only to preserve for appeal challenges to evidence admitted under Rule 404(b).

"A plain error is a highly prejudicial error affecting substantial rights." *United States v. Yarbrough*, 852 F.2d 1522, 1537 (9th Cir.) (citing *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986)), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988); *United States v. Houser*, 804 F.2d 565, 570 (9th Cir.1986).

## B

■ Courts are keenly aware of the dangers of admitting testimony concerning the drug courier profile. For example, the Eighth Circuit has held that such testimony may never be introduced as substantive evidence of guilt. *See United States v. Carter*, 901 F.2d 683, 684–85 (8th Cir.1990) ("Drug courier profiles are investigative tools, not evidence of guilt.... [They] are not to be admitted as substantive evidence of guilt.") (citing *United States v. Quigley*, 890 F.2d 1019, 1022–24 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990)). The Eleventh and Ninth Circuits have stated in dictum that they also would condemn such use of the drug courier profile. *See United States v. Hernandez–Cuartas*, 717 F.2d 552, 555 (11th Cir.1983) (denouncing "the use of this type of evidence as substantive evidence of a defendant's innocence or guilt," but holding that admitting it as background information was not plain error); *United States v. Beltran–Rios*, 878 F.2d 1208, 1211 (9th Cir.1989) (stating "[a]ppellant's argument that such profiles generally have no place as substantive evidence of guilt at trial is still valid," but holding that permitting their use for purposes of impeachment was not abuse of discretion).

However, this case does not implicate those concerns. Here the government introduced Inspector Espinoza's testimony not to prove that Gomez was guilty, but to provide the jury with a full and accurate portrayal of the events as they unfolded on that Friday afternoon. Indeed, the district judge twice cautioned the jury that it could consider Espinoza's testimony only as background material.[3] We agree with the Eleventh Circuit that admitting drug courier profile testimony for this limited purpose greatly reduces the potential for unfair prejudice and thus cannot amount to plain error.[4] *See Hernandez–Cuartas*, 717 F.2d at 555. *Cf. United States v. White*, 890 F.2d 1012, 1014 (8th Cir.1989) (no "clear abuse of discretion" to admit drug courier profile testimony for limited purpose of "explaining the modus operandi of the crimes defendants were charged with").

## III

■ Gomez next argues that the district court erred by allowing DEA Special Agent Pace, who was present shortly after Gomez's arrest, to testify as an expert on Gomez's intent to distribute the cocaine hidden in his suitcase.

The government introduced Special Agent Pace as an expert witness, based on his four years' experience involving over 200 narcotics arrests. Gomez challenges the following exchange:

Prosecutor: Now, in your opinion, Special Agent Pace, would an individual in possession of approximately $200,000 worth of cocaine, would that be an amount consistent with personal use or use for possession for distribution?

Pace: Possession with intent to distribute.

Prosecutor: Now, taking into consideration, Special Agent Pace, the items that were seized from [Gomez's suitcase] and the other factors that you've

---

3. Of course, it is our responsibility to presume that a jury follows clear instructions. *See McKenzie v. Risley*, 842 F.2d 1525, 1533 n. 16 (9th Cir.), *cert. denied sub nom., McKenzie v. McCormick*, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988).

4. Because Gomez did not preserve a Rule 403 objection below, we must leave to another day the question of whether such admission would amount to an abuse of the district court's broad discretion under that rule. *See Borunda v. Richmond,* 885 F.2d 1384, 1388 (9th Cir.1988) ("[T]rial courts have 'very broad discretion in applying Rule 403 and, absent abuse, the exercise of [their] discretion will not be disturbed on appeal.'") (quoting *Liew v. Official Receiver and Liquidator,* 685 F.2d 1192, 1195 (9th Cir. 1982)).

discussed, did you form an opinion as to whether the cocaine that was in [the suitcase] was cocaine that was possessed for personal use or possessed for distribution purposes?

Pace: Possession with intent to distribute.

Prosecutor: And what is the basis of that opinion?

Pace: The large amount [of cocaine], the way it was concealed, and where it was coming from.

Reporter's Transcript at 226–27.

Gomez argues that Special Agent Pace testified to his mental state in violation of Federal Rule of Evidence 704(b).[5] Generally speaking, we review the admission of expert testimony for manifest error. *See United States v. Castro,* 887 F.2d 988, 1000 (9th Cir.1989). However, because Gomez did not raise an objection before the district court, we review the admission of Pace's expert testimony for plain error. *See supra* Part II.A.

Gomez's argument lacks merit. We rejected a similar claim in *United States v. Kinsey,* 843 F.2d 383 (9th Cir.), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 75 (1988). There a detective, testifying as an expert, stated that Kinsey's possession and access to a large amount of cocaine indicated to him that Kinsey was involved in the distribution of cocaine. Conducting our review under the slightly more rigorous "manifest error" standard, we upheld the admission of the detective's testimony because it did not speak to Kinsey's mental state and was not misleading. *Id.* at 388–89.

Like the expert witness in *Kinsey,* Special Agent Pace merely testified that possession of large amounts of cocaine is consistent with an intent to distribute it. At no time did he give his opinion of what

Gomez actually thought. In this light, we do not find the admission of his testimony to be plain error.

## IV

In sum, we hold that the district court did not commit plain error by admitting the drug courier profile testimony for the limited purpose of providing the jury with background information. We also hold that the district court did not commit plain error by admitting expert testimony indicating that the defendant's actions and the amount of cocaine he was carrying were consistent with possession with an intent to distribute cocaine.

For these reasons, the judgment of the district court is AFFIRMED.

---

5. **Rule 704. Opinion on Ultimate Issue**

(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

(b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did

not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

