936 F.2d 581
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 UNITED STATES of America, Plaintiff-Appellee,
v.
Norvell Lee SPREWELL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theopholis Earl JACKSON, Defendant-Appellant.
 Nos. 89-50571, 89-50695.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1991.
Decided June 26, 1991.
 Before PREGERSON, CYNTHIA HOLCOMB HALL and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 BACKGROUND
 
 2
 On June 2, 1989, at approximately 11:30 p.m., Los Angeles police officers executed a search warrant at the home of defendant Theopholis Jackson. Three Los Angeles police officers testified that, when they entered the house, they saw co-defendant Norvell Lee Sprewell in the living room holding in his hand a plastic bag containing two "rocks," or dosage units, of cocaine base. Upon seeing the police, the officers testified that Sprewell dropped the bag and ran down a hallway towards the rear of the house. Two officers testified that they saw Sprewell pull a semi-automatic pistol from his waistband and toss it into a bedroom as he ran. Sprewell was caught by the officers at the end of the hallway and was arrested after a brief struggle.
 
 
 3
 The officers then went to the bedroom next door to the room where Sprewell threw his gun, and arrested Jackson. Jackson was found naked in bed with a female companion at the time of his arrest.
 
 
 4
 After arresting Sprewell and Jackson, police officers recovered the bag of cocaine and the fireman which had been discarded by Sprewell. They also found cocaine on a large piece of glass in a room next to the bedroom in which Jackson was arrested. During their search, the officers confiscated notebooks, computer diskettes, and a computer.
 
 
 5
 Sprewell confessed that he possessed the cocaine found at Jackson's house and that he was carrying the gun found. He told the police that he had been selling the cocaine and carrying the gun for Jackson.
 
 
 6
 Sprewell and Jackson were tried in one trial. Jackson testified that he shared the two-bedroom house where the cocaine was found with another man, Yul Gray. Jackson contended that he had no knowledge that any cocaine was present in the house. Sprewell testified that he was at the house to visit a friend, Yul Gray. Despite his previous confession, Sprewell denied that he possessed any cocaine or the firearm.
 
 
 7
 Both defendants stated that Gray had been in the house the night of the arrest. Sprewell testified that Gray left shortly afterwards. Gray did not testify at trial.
 
 
 8
 The jury found Jackson guilty of possession with intent to distribute cocaine within 1000 feet of a school yard. He was sentenced to 151 months imprisonment. The jury found Sprewell guilty of the same charge and of carrying a firearm during the commission of a drug trafficking offense. He was sentenced to 168 months imprisonment on the cocaine possession offense and 60 months consecutive imprisonment on the firearm possession offense.
 
 
 9
 Jackson moved for a new trial. In his motion for a new trial, Jackson presents several affidavits, including that of Yul Gray, suggesting that Gray lived in and was at the house the night the drugs were found. Counsel for Jackson alleges that the defendants were unable to locate Gray to testify at trial because Gray had been taken into custody for a parole violation. The district court denied Jackson's motion for a new trial, primarily because the court found that the evidence supporting the motion was neither new, nor procured with due diligence.
 
 DISCUSSION
 I. SPREWELL'S ARGUMENTS
 A. Motion to Sever
 
 10
 Sprewell's first argument is that the district court erred in denying his motion to sever his trial from that of his co-defendant Jackson. Sprewell concedes that he did not move to sever before the trial court. Sprewell's Brief at 6. Nonetheless, he contends that this court should hold that he effectively joined his co-defendant's motion to sever because the government responded with a "consolidated" answer to motions of both defendants. This argument is meritless. As the government correctly notes, its answer to defendants' motions was captioned a " 'consolidated opposition' only because it opposed more than one motion, not because of any implied or express intention to treat Jackson's severance motion as a joint motion brought on behalf of both defendants." Appellee's Brief in 89-50571 at 8.
 
 
 11
 When a defendant raises an issue on appeal that was not raised before the district court, we review for plain error. United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986). Plain error is invoked to prevent a miscarriage of justice or to preserve the integrity of the judicial process. Id. Sprewell has not shown prejudice resulting from the joint trial that would constitute plain error.
 
 
 12
 B. Cross-Examination Into Sprewell's Bail Status
 
 
 13
 Sprewell next argues that the trial court erred in denying his motion for a mistrial. Sprewell contends that counsel for Jackson improperly cross-examined him about his bail status on a pending criminal case. We review for abuse of discretion a district court's decision denying a motion for mistrial. United States v. Segal, 852 F.2d 1152, 1155 (9th Cir.1988).
 
 
 14
 Shortly after his arrest, Sprewell gave a confession to the police in which he alleged that he was holding the cocaine and firearm for Jackson. At trial, Jackson's counsel cross-examined Sprewell about the confession. Jackson's counsel sought to show that Sprewell implicated Jackson to avoid being sent back to prison for violating his parole.
 
 
 15
 At trial, Sprewell objected to this cross-examination on the grounds of relevance and asked for a mistrial. The district court overruled the objection and denied the motion for a mistrial. That ruling is correct because the cross-examination is relevant to show Sprewell's motive for implicating Jackson as the owner of the cocaine and firearm. On appeal, Sprewell argues that the cross-examination violated Fed.R.Evid. 403 and 404(a). Because Sprewell did not object on these grounds before the trial court, however, we review the propriety of the cross-examination under Rules 403 and 404(b) only for plain error. See Fed.R.Evid. 103; United States v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.), cert. denied, 111 S.Ct. 363 (1990).
 
 
 16
 Under Rule 404(b),[1] evidence of other crimes is not admissible to prove the defendant's propensity to commit crime, but is admissible for other purposes, such as proof of motive or intent. Here, the cross-examination is relevant to explain Sprewell's motive for telling the police that Jackson was the owner of the cocaine and firearm. Under Rule 403,[2] the danger of unfair prejudice did not substantially outweigh the probative value of the cross-examination. The cross-examination in question refers only to "the bail you were on from the court," not to any specific past crime. This vague reference to Sprewell's bail status is not unduly prejudicial, and does not constitute plain error.
 
 
 17
 C. Cross-Examination Into Sprewell's Use of Aliases
 
 
 18
 Sprewell's last argument is that the district court erred in allowing Jackson's counsel to cross-examine Sprewell concerning his prior use of aliases. Sprewell objected before the trial court to this line of questioning on the grounds that it was highly prejudicial and had no bearing on credibility. We review a district court's decision regarding the scope of cross-examination for abuse of discretion. United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989).
 
 
 19
 The court did not abuse its discretion in allowing cross-examination into Sprewell's use of aliases. The cross-examination could create unfair prejudice against Sprewell if the jury links his use of aliases to a general propensity to commit crime. On the other hand, the cross-examination, may be viewed as an attack on Sprewell's credibility by exposing his past willingness to lie about his identity. Furthermore, the court limited the potential prejudice by ruling that Jackson's counsel could not ask questions about any crimes or criminal charges relating to Sprewell's use of aliases.
 
 
 20
 Sprewell's citations to United States v. Clark, 541 F.2d 1016, 1018 (4th Cir.1976), and United States v. Bye, 1990 WL 58897, 1990 U.S.Dist. Lexis 4973 (S.D.N.Y.1990), do not help him. Both cases merely apply the general rule that it is permissible to include a defendant's alleged aliases in an indictment where the government will offer proof that the defendant used the aliases in the course of the offense charged in the indictment. See 541 F.2d at 1018; 1990 WL 58897 at 6, 1990 U.S.Dist. Lexis 4973 at 19-20. This rule is not relevant to this case.[3]
 
 II. JACKSON'S ARGUMENTS
 A. Limits on Cross-Examination
 
 21
 The district court allowed Jackson to impeach Sprewell with questions about Sprewell's bail status and prior use of aliases. But the court ruled that Jackson could not question Sprewell about past criminal activities. Jackson argues that the district court erred in precluding cross-examination into Sprewell's prior criminal history.
 
 
 22
 The government argues that Jackson has not preserved this issue for appeal because Jackson's counsel did not seek to cross-examine Sprewell about his criminal record. When Sprewell objected to Jackson's cross-examination into Sprewell's bail status, Jackson's counsel argued:
 
 
 23
 I do understand [Sprewell's counsel's] concern about [my cross-examination] possibly getting into an area that would not be admissible under [Federal Rules of Evidence] 608 or 404, and I'm not seeking to do that, and I can represent that I would never seek to bring out that it was a narcotics arrest or possession for narcotics, or that the case is going to trial on possession for narcotics.
 
 
 24
 Reporter's Transcript (RT), Vol. IV [08/23/89] at 516 (emphasis added).
 
 
 25
 Moreover, when the district court later ruled that Jackson could not ask Sprewell about any crimes or criminal charges relating to Sprewell's use of aliases, Jackson did not object. Id. Because we agree with the government that Jackson did not raise this issue before the district court, we review for plain error. United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986).
 
 
 26
 There was no plain error. Jackson was allowed ample opportunity to establish the bias and motivation of his co-defendant Sprewell. Three officers had testified that Sprewell was caught holding a baggie of rock cocaine. Furthermore, Jackson was allowed to elicit on cross-examination that Sprewell's bail could be revoked for having possessed cocaine. This provides strong ammunition for Jackson to argue that Sprewell had a compelling reason for lying.
 
 B. Seizure of Computer and Diskettes
 
 27
 Jackson argues that the officers exceeded the scope of the search warrant by seizing a computer and computer diskettes. The search warrant authorized the officers to search for "any talley sheets or pay and owe sheets which tend to establish any narcotics and dangerous drug transactions." In executing the warrant, the officers seized a personal computer along with its programs and disks. After taking the computer back to police headquarters, a computer specialist helped find files in the computer's electronic memory that purportedly contained pay-and-owe sheets evidencing narcotics sales.
 
 
 28
 The district court denied Jackson's motion to suppress the printouts from the computer that purported to be pay-and-owe sheets. We review de novo whether officers exceeded the scope of the search warrant. United States v. McLaughlin, 851 F.2d 283, 285 (9th Cir.1988).
 
 
 29
 In United States v. Gomez-Soto, 723 F.2d 649 (9th Cir.), cert. denied, 466 U.S. 977 (1984), this court upheld the admission of a microcassette, which was found during a search conducted pursuant to a warrant for drug trafficking documentation. As in this case, the warrant called only for the seizure of tangible documents, not electronically stored documents. Nonetheless, the court upheld the seizure of the microcassette. It explained:
 
 
 30
 [i]f a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant. "
 
 
 31
 Id. at 654 (emphasis added).
 
 
 32
 Like the microcassette in Gomez-Soto, a computer is "by its very nature a device for recording information." Id. at 655. An officer searching for pay-and-owe sheets could reasonably expect to find them within the memory of a computer. The warrant need not describe the precise form of the records. The district court did not err in holding that the computer and computer disks are within the scope of the warrant.
 
 
 33
 Although not entirely clear from his brief, Jackson appears to make the separate, but related argument, that the warrant lacks sufficient particularity to pass muster under the Fourth Amendment. See Jackson's Brief at 22-23. Jackson contends that officer Rieben knew that a computer was present because he observed the computer when he conducted a search at the same residence a month earlier. Thus, according to Jackson, the warrant is invalid under the Fourth Amendment because it did not specifically list the computer as an item to be seized.
 
 
 34
 "The Fourth Amendment requires that a warrant particularly describe both the place to be searched and the person or things to be seized. The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." United States v. Spilotro, 800 F.2d 959, 963 (9th Cir.1986). One factor to consider in determining whether a warrant sufficiently defines the objects to be seized is "whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." Id.
 
 
 35
 Contrary to Jackson's contention, the warrant satisfies the particularity requirement of the Fourth Amendment. Even if officer Rieben knew a computer was present, he did not know if it contained records of drug sales. The warrant describes the items to be seized as "talley sheets or pay and owe sheets." This description reasonably describes the items to be seized.
 
 
 36
 C. Admissibility of Notebooks and Computer Printouts
 
 
 37
 On appeal, Jackson argues that the district court erred in admitting notebooks and computer printouts purporting to be "drug ledgers." Because Jackson concedes that he did not raise this issue below, see Jackson's Brief at 25, we review for plain error.
 
 
 38
 Jackson's sole contention is that the admission of the notebooks and printouts constitutes plain error because the government failed to provide a proper foundation for their admissibility. Jackson cites United States v. Ordonez, 737 F.2d 793 (9th Cir.1984), and United States v. Mouzin, 785 F.2d 682 (9th Cir.), cert. denied, 479 U.S. 985 (1986), in support of his argument. Both are distinguishable.
 
 
 39
 The critical distinction is that, in both Ordonez and Mouzin, the government failed to establish who prepared the ledgers in question. See Ordonez, 737 F.2d at 800 ("the government conceded that the persons who made these entries [in the ledgers] were not identified at trial"); Mouzin, 785 F.2d at 692 (" [a]uthorship of the ledger entries was never established and therefore we have no knowledge of the declarant's identity"). Absent this foundation, the ledgers were not admissible under either Fed.R.Evid. 801(d)(2)(A) (admission of party opponent) or Fed.R.Evid. 801(d)(2)(E) (co-conspirator exception).
 
 
 40
 In the instant case, on the other hand, the notebooks and computer printouts are admissible as admissions of a party opponent under Rule 801(d)(2)(A). Unlike Ordonez and Mouzin, a proper foundation was provided to establish that the notebooks and printouts were statements of the defendant. The printouts were taken from files in Jackson's computer and the notebooks from the dresser by his bed. More importantly, Jackson testified on direct examination that he prepared the ledgers himself (but argued that the ledgers listed debts, not drug sales). These facts sufficiently establish that Jackson prepared the ledgers so as to provide a foundation for their admissibility as admissions of a party opponent under Fed.R.Evid. 801(d)(2)(A). The district court therefore did not commit plain error in admitting the notebooks and printouts into evidence.
 
 
 41
 D. Admissibility of Testimony of Suspicious Traffic at Jackson's House the Week Before His Arrest
 
 
 42
 Jackson contends that the district court erred in allowing testimony by officer Rieben that numerous pedestrians and vehicles had been observed approaching Jackson's house in a suspicious manner in the week before his arrest:
 
 
 43
 [V]ehicles would pull up, and people would get out. They would go to the door. Sometimes they [would] enter. Sometimes they would stay at the door, but they would just stay for a short duration, and then they would return to their vehicles and leave. And the same occurred with the pedestrians when they came up the sidewalk.
 
 
 44
 RT, Vol. III [08/22/1991] at 131.
 
 
 45
 Jackson asserts that the government introduced this evidence to show the "bad character" of the house. He argues that the government's attempt to show that Jackson's house fits the profile of a cocaine "rock" house is analogous to using a "drug courier profile," which this court has looked on with disfavor on many occasions. See, e.g., United States v. Gomez-Norena, 908 F.2d 497, 501 (9th Cir.) ("Courts are keenly aware of the dangers of admitting testimony concerning the drug courier profile."), cert. denied, 111 S.Ct. 363 (1990).
 
 
 46
 Despite his attempt to analogize to "drug courier profiles," Jackson is essentially arguing that the district court erroneously admitted officer Rieben's testimony in violation of Fed.R.Evid. 404(b). In fact, this is the ground Jackson relied on when moving to exclude the evidence before the district court. Rule 404(b) prohibits evidence of other acts to prove the criminal character of the defendant to show action in conformity thereof, but allows the use of such evidence for other purposes, such as to prove intent or knowledge.
 
 
 47
 In this case, Rule 404(b) does not bar the testimony of officer Rieben regarding the traffic at Jackson's house the week preceding Jackson's arrest. The testimony is relevant as circumstantial evidence that Jackson possessed the cocaine inside the house with the intent to sell. Because the testimony is relevant for a purpose other than to prove defendant's propensity to commit crime, admission of the testimony does not violate Rule 404(b).
 
 E. Sufficiency of the Evidence
 
 48
 Jackson next contends that the government presented insufficient evidence to sustain his conviction of possession with intent to distribute cocaine. We determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 110 S.Ct. 179 (1989).
 
 
 49
 The following facts are supported by evidence in the record:
 
 
 50
 (1) Jackson rented the house where the cocaine was found from his mother;
 
 
 51
 (2) Sprewell had a quantity of cocaine in his hand when the police entered his house;
 
 
 52
 (3) shortly after his arrest, Sprewell confessed that he was selling the cocaine at the request of and on behalf of Jackson;
 
 
 53
 (4) approximately 30 "rocks" of cocaine were found on the floor in the room next door to Jackson's and the door was open;
 
 
 54
 (5) upon hearing the police enter, Jackson barricaded his bedroom door; and
 
 
 55
 (6) Jackson admitted keeping ledgers which appeared to be pay-and-owe sheets documenting sales of cocaine.
 
 
 56
 From these facts, a reasonable jury could conclude beyond a reasonable doubt that Jackson constructively possessed with the intent to distribute the cocaine charged in the indictment.
 
 F. The Mystery Witness--Yul Gray
 
 57
 At trial, both Jackson and Sprewell testified that one Yul Gray lived in the bedroom where the "rocks" of cocaine were found. In his brief, Jackson alleges that his trial counsel had been unable to locate Gray to testify because Gray had been taken into custody on a parole violation. During his closing argument, government's counsel told the jury not to believe defendants' story concerning the "mystery" witness Gray because the defendants had presented no evidence that Gray existed.
 
 
 58
 On appeal, Jackson contends the government committed prosecutorial misconduct by suggesting in closing argument that Gray did not exist when in fact officer Rieben arrested Gray in the same house a month earlier. Jackson also contends that the district court erred in denying his motion for a new trial based on newly discovered evidence concerning Gray's role in the charged crimes.
 
 1. Prosecutorial Misconduct
 
 59
 Jackson's counsel did not object to the closing argument at trial or request a curative instruction. Ordinarily in these circumstances, we review for plain error. But here Jackson's contention that the government knew Gray existed, yet argued otherwise, is based on alleged facts that Jackson presumably was not aware of at trial. Under these circumstances, it would be illogical to require Jackson to object at trial. Thus, the court will apply the general abuse of discretion standard.
 
 
 60
 Nonetheless, even under the abuse of discretion standard, Jackson's argument fails. Jackson's prosecutorial misconduct argument hinges on his allegation that officer Rieben knew who Gray was before trial because Rieben arrested Gray a month earlier at the same house where the drugs were found. But our review of the record finds no evidence to show that officer Rieben knew the person he allegedly arrested was named Gray.
 
 2. Motion for New Trial
 
 61
 Jackson also contends that the district court erred in denying his motion for a new trial on the basis of newly discovered exculpatory evidence. We review the district court's decision whether to grant a new trial for abuse of discretion. United States v. Kenny, 645 F.2d 1323, 1345 (9th Cir.), cert. denied, 452 U.S. 920 (1981).
 
 
 62
 A defendant is entitled to a new trial on the basis of newly discovered evidence when five requirements are met:
 
 
 63
 (1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal.
 
 
 64
 United States v. Arbelaez, 719 F.2d 1453, 1461-62 (9th Cir.1983), cert. denied, 467 U.S. 1255 (1984).
 
 
 65
 The district court denied the motion for a new trial on the grounds that (1) the defense did not use due diligence in obtaining the evidence, (2) the evidence "at best would be impeaching of officer Rieben's testimony," and (3) even if the evidence was introduced at the original trial, the court did "not believe that the jury would have reached another verdict." RT, Vol. VII [12/11/1989] at 17-19.
 
 
 66
 In ruling that the defense acted without due diligence in obtaining the "new" evidence, the court stated:
 
 
 67
 I think there's been a failure of due diligence on the part of the defense. This information was available, police records were available. It was not until after the completion of the trial and the jury verdict was rendered that the defense suddenly decided to bestir itself. This is not newly discovered evidence which was not available prior to the time of trial.
 
 
 68
 Id. at 17-18.
 
 
 69
 Jackson has not pointed to any evidence sufficient to upset this finding of fact. Jackson was arrested on June 2, 1989, and stood trial on August 22, 1989. He did not present his motion for a new trial until November 20, 1989. The district court acted within its discretion in finding that Jackson lacked due diligence in procuring the evidence supporting his motion for a new trial.[4]
 
 
 70
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Fed.R.Evid. 404(b) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [2]
 Fed.R.Evid. 403 states:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 [3]
 Sprewell also argues on appeal, though not before the trial court, that cross-examination into his use of aliases violates Rule 404(b)'s prohibition against "bad acts" evidence. This argument is without merit. Aliases do not fit within the definition of "other crimes, wrongs, or acts" under Rule 404(b)
 
 
 [4]
 Throughout his brief, Jackson points out instances where he believes his counsel performed inadequately. He suggests that this court may wish to consider his ineffective assistance of counsel claim on direct appeal. We decline to do so. See United States v. Houtchens, 926 F.2d 824 (9th Cir.1991) (defendant are generally required to raise ineffective assistance of counsel claims under 28 U.S.C. Sec. 2255 because such claims require the development of facts outside the record)