990 F.2d 1265
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hanan SUNDIATA, Defendant-Appellant.
 No. 91-10629.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1993.
Decided April 9, 1993.
 
 Before CHOY, PREGERSON and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Hanan Sundiata was convicted after a jury trial of two counts of mail fraud in violation of 18 U.S.C. § 1341. The district court sentenced Sundiata to fifteen months in prison and three years of supervised release. Sundiata appeals from the conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 According to the government's evidence at trial, Sundiata was involved in a scheme to fraudulently obtain funds from Sundiata's employer, Northwestern National Life Insurance Company. Sundiata and another participant in the scheme, Leonardo Hutchinson, worked as claims examiners for Northwestern. The government presented evidence that Sundiata devised a plan whereby fraudulent insurance claims checks would be issued to friends of Hutchinson, who would cash the checks and share the proceeds with Hutchinson and Sundiata. Fourteen checks were issued under Sundiata's employee identification number to three individuals recruited by Hutchinson. Sundiata denied any participation in this scheme. She suggested that Hutchinson could have somehow obtained her computer password and issued the checks under her identification number.
 
 
 4
 Sundiata's attorney stipulated to the admission into evidence of the fourteen checks. Sundiata's name was handwritten on two of the checks along with the telephone number of Northwestern. An employee from a check cashing service testified that she made the notation on one of these checks after speaking to someone named "Hanan" at Northwestern who told her that the checks were authorized.
 
 
 5
 Sundiata was charged with fourteen counts of mail fraud corresponding to the fourteen checks issued. The jury convicted on only two counts, both of which involved checks with handwritten notations suggesting that Sundiata had verified them. The jury was unable to reach a verdict on the other twelve counts, and a mistrial was declared as to those counts. The mistried counts were dismissed at the sentencing hearing.
 
 A. Batson Challenge
 
 6
 Sundiata, who is black, claims that her rights to due process and equal protection were violated by the prosecutor's discriminatory use of peremptory challenges to dismiss two black jurors. In Batson v. Kentucky, 476 U.S. 79, 89 (1986), the Supreme Court established that a defendant's right to equal protection is violated if the prosecutor "challenge[s] potential jurors solely on account of their race." We review the trial court's determination of whether the prosecutor purposefully discriminated for clear error. United States v. Power, 881 F.2d 733, 739 (9th Cir.1989).
 
 
 7
 During jury selection in this case, the prosecution made a motion to challenge for cause three potential jurors. Two of these jurors, Britt and Robinson, were black. After the district court denied the motion for cause, the prosecutor exercised three of his peremptory challenges to dismiss the three jurors. When questioned by the court, the prosecutor explained that he wanted to reincorporate his arguments made earlier in support of the motion to excuse the jurors for cause. The prosecutor added that he felt that juror Britt had already made up her mind and expressed hesitancy about being a juror. He also noted that juror Robinson was defensive and had described negative experiences with law enforcement. The district court decided that "the reasons [the prosecutor] articulated in support of his motion for cause, and has just articulated here in addition, are sufficient to demonstrate a non-racial reason for the exercise of challenges against Jurors Robinson and Britt." (Supp. Excerpts of Record at 130-31.)
 
 
 8
 Sundiata argues first that the district court's "cursory evaluation" of the prosecutor's neutral explanations was insufficient. We find this argument without merit. The district court was not required to discuss on the record its reasons for finding the prosecutor's explanations sufficient, and there is no indication that the court failed to individually evaluate the prosecutor's explanations for each peremptory challenge.
 
 
 9
 Sundiata also suggests that the district court believed that a prior unsuccessful challenge for cause by itself would be sufficient to establish a neutral justification for a peremptory challenge. However, the district court did not endorse such a proposition, and instead found only that the reasons expressed by the prosecutor in making his earlier motion for cause, as well as his additional statements, were sufficient.
 
 
 10
 Sundiata's main argument is that the prosecutor's explanations for exercising the peremptory challenges were pretextual because five non-black jurors who were not challenged also had expressed negative feelings toward law enforcement. We hold that the district court did not clearly err in finding that the prosecutor's neutral explanations were sincere.
 
 
 11
 Juror Britt indicated that she was extremely reluctant to be a juror and that she had already formulated opinions about the case. Likewise, juror Robinson expressed doubt about whether she could be impartial in evaluating the testimony of a police officer. Although several other jurors who were not challenged also expressed negative feelings about law enforcement, most did not express any significant doubt as to whether they could be fair. Furthermore, the prosecutor also used a peremptory challenge to excuse a juror who was not black because of his negative feelings about law enforcement. Since the district court had the opportunity to observe the demeanor of the prosecutor as well as the potential jurors, the court's findings are entitled to "great deference." See Batson, 476 U.S. at 98 n. 21. We conclude that the district court's findings were not clearly erroneous.
 
 B. Admission of Character Evidence
 
 12
 Sundiata argues that the district court improperly admitted prejudicial character evidence tending to show that Sundiata was "rude and lacking in diligence" at work. (Appellant's Opening Brief at 29.) In questioning Katherine Wagoner, an employee of a hospital insured by Northwestern, the prosecutor asked several questions about Sundiata's performance in processing claims for the hospital's employees. After Wagoner stated that she was not satisfied with Sundiata's services, the prosecutor asked why she was not satisfied. The defense attorney then objected to the question's relevancy, and the court overruled the objection. Wagoner responded to the question as follows: "The relationship when employees would talk to her directly. They found her rude and curt, not willing to research the discrepancy or question." (Supp. Excerpts of Record at 90.)
 
 
 13
 Since the basis for Sundiata's objection at trial was relevancy and not the prohibition against character evidence, we review the district court's ruling for plain error. See United States v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.), cert. denied, 111 S.Ct. 363 (1990) (To preserve an evidentiary issue for appeal, at trial a party must make the proper specific objection.). Even assuming that Wagoner's testimony could be considered impermissible "character evidence" as it is defined by Fed.R.Evid. 404(a), we do not believe that the admission of the evidence was so prejudicial as to constitute plain error.
 
 C. Denial of Motion In Limine
 
 14
 After the government's case-in-chief, Sundiata's counsel informed the district court that he planned to put on character witnesses, and sought an advance ruling on the admissibility of the government's possible rebuttal evidence. The prosecutor refused to disclose the nature of the government's rebuttal evidence. The district court then denied the motion in limine, stating that if Sundiata put on character witnesses, then the court would admit "anything that is relevant to her character trait for honesty." (Supp. Excerpts of Record at 104.) After receiving this ruling, Sundiata chose not to put on any character witnesses. On appeal, she contends that the court's failure to compel the prosecutor to disclose his rebuttal evidence and to rule on the admissibility of that evidence supports a reversal of her conviction.
 
 
 15
 We find this argument without merit. Under the rule of Luce v. United States, 469 U.S. 38 (1984), Sundiata waived her right to appeal the district court's ruling by failing to put on any character witnesses. As in Luce, if the district court's ruling were appealable, we would have to speculate as to precisely what the character witnesses would have said and what rebuttal evidence would have been presented. See id. at 41.[1] We therefore conclude that Sundiata failed to preserve for appeal the issue of whether the district court's ruling was proper.
 
 D. Ineffective Assistance of Counsel
 
 16
 Sundiata contends that the defense attorney's performance at trial constituted ineffective assistance of counsel because he stipulated to the admission of what Sundiata contends was inadmissible hearsay evidence.
 
 
 17
 The issue of ineffective assistance of counsel is ordinarily raised in habeas proceedings, and can be raised on direct appeal only "where 'the defendant's legal representation was so inadequate as obviously to deny him his sixth amendment right to counsel.' " United States v. Rewald, 889 F.2d 836, 859 (9th Cir.1989) (quoting United States v. Wagner, 834 F.2d 1474, 1482 (9th Cir.1987)), modified, 902 F.2d 18 (9th Cir.), cert. denied, 498 U.S. 819 (1990). To demonstrate ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that the defendant was thereby prejudiced. Strickland v. Washington, 466 U.S. 668, 687 (1984).
 
 
 18
 The defense attorney stipulated to the admission into evidence of two checks, Exhibits 7 and 8. Each check bore a handwritten notation with the Northwestern phone number and "Hanan" or "Hanan Mann." An employee of a check cashing service testified that she wrote the notation on Exhibit 7 after she verified the check by calling the Northwestern office and speaking to someone named "Hanan". She also testified that she usually telephones insurance companies to verify their checks. No witnesses were called to testify directly about the notation on Exhibit 8.
 
 
 19
 We decline to reach the issue of ineffective assistance on this appeal since the record does not reveal any obvious ineffectiveness of counsel. The handwritten notations on Exhibits 7 and 8 would probably have been admitted under the business records exception to the hearsay rule if the defense attorney had not stipulated to their admission.[2] Thus, the defense attorney's stipulation did not obviously deny Sundiata her right to counsel, and we decline to reach this issue on direct appeal.
 
 E. Sentencing
 
 20
 Sundiata argues that in sentencing the district court improperly considered the losses involved in all fourteen of the counts charged, even though the jury could not reach a verdict in twelve of the counts. We need not reach this issue since Sundiata did not raise it during the sentencing proceeding. See United States v. Belden, 957 F.2d 671, 674-75 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992).
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Speculation would be necessary even if the district court had compelled the government to disclose the nature of its rebuttal evidence and had ruled on its admissibility. See id. at 41 n. 5 (noting that trial testimony may differ from an advance proffer)
 
 
 [2]
 Business records are not excluded by the hearsay rule if they are recorded "in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make [the records]." Fed.R.Evid. 803(6)