82 F.3d 424
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rocky HALSEY, True Name: Rock Halsey, Defendant-Appellant.
 No. 95-50175.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1996.
Decided April 8, 1996.
Order Denying Rehearing and Suggestion for Rehearing En Banc
May 23, 1996.
 
 Before: PREGERSON and T.G. NELSON, Circuit Judges, and LYNCH,* District Judge.
 MEMORANDUM**
 A. Sufficiency of the Evidence
 1. Standard of Review
 "In reviewing the sufficiency of the evidence, we set aside the jury's verdict only if, viewing all the evidence in the light most favorable to the government, we determine that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Martinez, 967 F.2d 1343, 1345 (9th Cir.1992).
 2. "Using or Carrying" a Firearm
 A conviction for "use" of a firearm under " § 924(c)(1) requires evidence sufficient to show an active employment by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." Bailey v. United States, 116 S.Ct. 501, 505 (1995). "The active employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." Id. at 508.
 To be convicted of "carrying" a firearm under § 924(c)(1), "the defendant must have transported the firearm on or about his or her person. This means the firearm must have been immediately available for use by the defendant." United States v. Hernandez, 1996 WL 34822 (9th Cir. Jan. 31, 1996) at * 3.
 It is undisputed that defendant opened the gun case and "displayed" the gun to Warren while in the passenger compartment of the car. A reasonable jury could have determined that this display of the firearm constituted "use" within the meaning of § 924(c)(1). See Bailey, 116 S.Ct. at 508; United States v. Davis, 76 F.3d 311, 315 (9th Cir.1996).
 It is also undisputed that defendant physically carried the firearm in the passenger compartment of the car for three to five minutes. Thus, a reasonable jury could have determined that defendant "carried" the firearm within the meaning of § 924(c)(1). See Hernandez, 1996 WL 34822 at * 3.
 3. "During and in Relation to" a Drug Trafficking Offense
 Defendant possessed the drugs at issue after the gun was picked up, while the gun was in the passenger compartment and after the gun was placed in the trunk. The gun was "available" to defendant both during the time that it was carried in the passenger compartment and after it was placed in the trunk. Viewing the evidence in the light most favorable to the Government, a reasonable jury could have determined, beyond a reasonable doubt, that the gun had some purpose or effect with respect to the possession of the drugs or had the potential of facilitating the possession with intent to distribute the drugs. See Smith v. United States, 508 U.S. 223, 113 S.Ct. 2050, 2059 (1993). Therefore, there was sufficient evidence to support a finding that the firearm was used or carried "during and in relation to" a drug trafficking offense.
 B. Admission of Evidence
 1. Standard of Review
 A district court's evidentiary rulings are reviewed for an abuse of discretion. United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995).
 2. The Gun Case
 At the time that defendant was arrested by the police, there were four people in the car, and the gun was in the trunk. Although the Government had to prove that defendant did more than merely possess the gun to convict under § 924(c)(1), possession was a key element to proving the § 924(c)(1) charge. Evidence of the gun case, ammunition clips and instruction book tended to prove that defendant, and not the other passengers, possessed, owned and controlled the gun at the relevant time. This evidence, in conjunction with other evidence admitted at trial, allowed the jury to infer that defendant "used or carried" the gun in violation of § 924(c)(1). The evidence was therefore properly admitted by the district court.[1]
 3. The Audio Tape
 There was sufficient evidence linking the audio tape to the charges against defendant. The tape was found in room 117 of the Budget Lodge Motel, along with some of the drugs at issue in this case. It is undisputed that the predominant voice on the tape belongs to defendant. The tape was found amongst various other items belonging to defendant, including an identification card, a personal organizer, and clothing. Defendant had moved his belongings from the Palms Inn to room 117 the night before the tape was found and defendant had been picked up at room 117 approximately one hour before the officers found the tape.
 In one of the first conversations on the tape, defendant made a reference to the "Palms Inn." Defendant stipulated that he resided at the Palms Inn until October 22, 1993, immediately before he took up residence at the Budget Lodge Motel on the evening of October 22, 1993. In one of the recorded conversations, defendant speaks with "Chuey." In this conversation, defendant makes reference to the fact that the conversation is taking place on a Friday. On October 23, 1993, a Saturday, defendant met with "Chuey" to obtain more methamphetamine. The above evidence was sufficient to link the tape to the charges against defendant, and therefore the district court did not err in admitting the tape. See United States v. Walker, 993 F.2d 196, 199 (9th Cir.), cert. denied, 114 S.Ct. 276 (1993).
 Furthermore, defendant's willingness to stipulate that the drugs found in room 117 involved an amount for distribution did not alleviate the need for admission of the tape. The Government had the burden to prove that defendant possessed the drugs in room 117. Defendant's theory of defense centered on his assertion that the drugs belonged to Kersey and not to him. Thus, the audio tape was relevant to rebut defendant's theory of defense and to prove an essential element of the charge--that defendant possessed the drugs.
 4. The "Basement Lori" Letter
 The "Basement Lori" letter could have reasonably been interpreted as a threat to Ms. Lori Ashauer and Mr. Sheldon Homa. Evidence of the letter was therefore admissible to show defendant's "consciousness of guilt." United States v. Meling, 47 F.3d 1546, 1577 (9th Cir.) (evidence that the defendant had "threatened his father-in-law and uncle to intimidate them into withholding information from the FBI" was admissible to show "consciousness of guilt--second only to a confession in terms of probative value"), cert. denied, 116 S.Ct. 130 (1995).
 Defendant failed to raise an objection to admission of the letter on the basis of Fed. R. Evid. 403 before the district court. We therefore review admission of the letter under Rule 403 for the plain error. See United States v. Gomez-Norena, 908 F.2d 497 , 500 (9th Cir. 1990).
 Under Rule 403, evidence may be excluded if "its probative value is substan-tially outweighed by the danger of unfair prejudice ..."
 The probative value of the letter is substantial. See United States v. Meling, 47 F.3d 1546, 1577 (9th Cir.) (defendant's threat showing consciousness of guilt is "second only to a confession in terms of probative value"), cert denied, 116 S.Ct. 130 (1995). Halsey's general claims of prejudice -- that the letter "did not bear any relation to the issues being considered by the jury," that the letter "was an unfortuante expression of anger, not a document reflecting a consciousnesss of guilt or attempt to intimidate a witness," that the letter "concerned what had already occurred, not potential future testimony," that the letter "prejudiced Mr. Halsey as a person in the jury's eyes," and that the "prejudicial impact of the letter was made especially apparent when the jury sent out a note asking why it had not been given a copy of the letter" -- do not constitute "unfair prejudice" which "substantially outweighs" the probative value of the letter. The letter was therefore admissible under Rule 403.
 Because admission of the letter was not "highly prejudicial error affecting substantial rights," there is no plain error. Gomez-Norena, 908 F.2d at 501. We therefore affirm the district court's admission of the letter.PH0HC. Exclusion of Kersey's Prior Conviction
 1. Standard of Review
 We review a district court's decision on whether to admit evidence of prior bad conduct under Fed.R.Evid. 404(b) for an abuse of discretion. United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993).
 2. Discussion
 Defendant failed to show that the characteristics of Kersey's prior conviction and the characteristics of the present charges were sufficiently distinctive to warrant an inference that Kersey committed the offense at issue. See United States v. Andrini, 685 F.2d 1094, 1097 (9th Cir.1982). The only evidence that defense counsel gave to the district court is that Kersey was convicted of the offense of possession of methamphetamine and possession of a weapon. There was no showing of the facts surrounding Kersey's prior offense. Thus, there was no showing that Kersey's prior conviction and the offense at issue were distinctive enough to permit an inference that it was Kersey, and not defendant, that committed the crime at issue.
 To the contrary, the characteristics of both the prior offense and the charged offense are not in any way distinctive; instead, they are similar to numerous other crimes committed by persons other than defendant or Kersey. Therefore, no inference of identity can arise and the district court did not abuse its discretion in excluding the evidence. See United States v. Perkins, 937 F.2d 1397, 1400-01 (9th Cir.1991).
 Furthermore, even assuming that the evidence of Kersey's prior conviction should have been admitted under Fed.R.Evid. 404(b), the evidence was excludable under Fed.R.Evid. 403 on the basis that it was cumulative and would cause considerable confusion in the minds of the jury.
 The evidence was cumulative because defendant had already elicited extensive testimony that Kersey had a history of manufacturing and selling methamphetamine. Admission of this evidence would have confused the jury by asking them to consider Kersey's criminal conviction as proof that she committed the crimes, without knowing the facts surrounding the conviction.
 D. Two-Level Enhancement for Obstruction of Justice
 1. Standard of Review
 "The legal conclusion that [the defendant's] conduct constituted an obstruction of justice within the meaning of section 3C1.1 is reviewed de novo." United States v. Acuna, 9 F.3d 1442, 1444 (9th Cir.1993).
 2. Discussion
 In his letter to "Lori," defendant calls Ms. Ashauer a "backstabbing bitch." He expresses his displeasure about Ashauer's revealing his whereabouts to Mr. Sheldon Homa, who passed the information on to the police. Defendant stressed that he will "NEVER FORGET" either Ashauer or Homa "not if it's 5-10 years." As the district court stated, the "Basement Lori" letter constituted
 an intent on the part of Defendant to dissuade Ms. Lori Ashauer from testifying or assisting the Government in any way in its prosecution of Defendant.... Defendant's statements [in the letter] are more than sufficient to suggest that Defendant was not merely venting his anger when he wrote the letter; they suggest an intent on his part to obstruct justice.
 Defendant's letter clearly constitutes an attempt to obstruct justice within the meaning of U.S.S.G. § 3C1.1. Therefore, we affirm the district court's two-level enhancement for obstruction of justice.
 
 E. Prosecutorial Vindictiveness
 
 1
 The standard of review for vindictive prosecution claims is unsettled in the Ninth Circuit. United States v. Montoya, 45 F.3d 1286, 1291 (9th Cir.), cert. denied, 116 S.Ct. 67 (1995). However, even under the de novo standard, we find that the district court did not err in refusing to dismiss the indictment.
 
 
 2
 First, the defendant was indicted by the federal grand jury on December 9, 1993, approximately twelve days before he filed his motion to suppress evidence on December 21, 1993. Therefore, the federal decision to indict was not made "in response" to his motion to suppress evidence in the state court.
 
 
 3
 Second, the mere fact that defendant refused to plead guilty is insufficient to warrant a presumption that subsequent changes in the charging decision are vindictive. See United States v. Goodwin, 457 U.S. 368, 382-82 (1982).
 
 
 4
 Finally, even assuming that a presumption of vindictiveness did arise, the affidavit of Larry Burns was sufficient to rebut the presumption. Therefore, the Government met its burden.
 
 
 5
 AFFIRMED.
 
 ORDER
 
 6
 May 23, 1996.
 
 
 7
 The memorandum disposition filed April 8, 1996 is amended as follows:
 
 
 8
 The panel has voted to deny appellant's petition for rehearing. Judge Pregerson and Judge Nelson vote to reject the suggestion for rehearing en banc, and Judge Lynch so recommends.
 
 
 9
 The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.
 
 
 10
 With the exception of the amendment listed above, the petition for rehearing is denied and the suggestion for rehearing en banc is rejected.
 
 
 
 *
 Honorable Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because the evidence is direct evidence and not "other acts" evidence, there is no need to consider whether the evidence was admissible under Fed.R.Evid. 404(b)