UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald Lee WULFERDINGER,
Defendant-Appellant.

No. 85–1133.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1985.

Decided Feb. 13, 1986.

---

Sanford Svetcov, San Francisco, Cal., for plaintiff-appellee.

Barry J. Portman, Asst. Federal Public Defender, James F. Hewitt, San Francisco, Cal., for defendant-appellant.

Before BROWNING, Chief Judge, and TANG, Circuit Judge, and WILLIAMS,* District Judge.

TANG, Circuit Judge:

Wulferdinger, previously convicted of a felony in 1975, appeals from a denial of his motion to suppress evidence used to sustain his guilty plea to charges of possession of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (1982), and felon's possession of firearms in violation of 18 U.S.C. § 1202(a)(1) (1982). His suppression motion was based on the warrantless search of his residence; he reserved his right to appeal the denial of this motion when he entered his guilty plea. We affirm.

## FACTS

Undercover detective Beren met with a suspect named Jackson at the Holiday Inn in Belmont, to transact a cocaine sale. After Beren displayed $20,000 in cash, Jackson left to call his "connection." When he returned he stated he was leaving to meet his connection to discuss the sale. Jackson then entered Wulferdinger's residence at 418 Yorkshire Way, came away empty-handed, returned to the Holiday Inn and reported that he had to call "his people" in a half hour. Jackson again left to use a phone, and returned to state that he would have to call again in 15 minutes. After that call, he said he would go to pick up the half pound of cocaine which would cost Beren $13,500.

Meanwhile, a surveillance unit at 418 Yorkshire Way saw Robert Riviera enter the house. A few minutes later, Jackson arrived on his second visit and left the house carrying a brown paper bag. Jackson returned to the Holiday Inn, sold the cocaine to Beren, and was arrested. On his way to the station, Jackson told detective Mackey that he was expected to return to his supplier's residence within the hour.

Minutes after Jackson's arrest, Riviera left 418 Yorkshire. Detective Mackey suspected Riviera might have been the source of the cocaine, while the supervising officer, Johnson, suspected Riviera was either the supplier or a resident removing evidence. Johnson ordered Riviera's arrest. Riviera was found to have a small quantity of cocaine and $1,380 cash.

Without obtaining a warrant, Johnson directed some uniformed and some plain-clothes officers to secure 418 Yorkshire. When the officers knocked on the door Wulferdinger looked out the window in front of which stood a uniformed officer. As soon as the officer identified himself and asked Wulferdinger to come to the door to speak with him, Wulferdinger instead ran towards the rear of the house. The officers at the door repeated the request for entry, then broke the door down and saw Wulferdinger at the end of the hallway armed with a .45 handgun and

---

* Honorable David W. Williams, Senior United States District Judge for the Central District of California, sitting by designation.

with a bullet proof vest on the floor. Wulferdinger barricaded himself and a female companion in the bathroom. They surrendered after about 20 minutes. The officers saw a second pistol and plastic bags containing white powder in the bathroom. The officers obtained a warrant before initiating a search which uncovered three other pistols, other plastic bags with white residue, cocaine packaging paraphernalia, two bags of methamphetamine, and $20,900 in cash.

Wulferdinger was indicted on counts of possession of methamphetamine and felon in possession of firearms. He entered a conditional guilty plea, reserving his right to appeal from the denial of his motion to suppress the evidence obtained from his residence. The district court found the entry and search legal, and that the warrant was supported by probable cause. Wulferdinger filed a timely appeal and we exercise jurisdiction under 28 U.S.C. § 1291 (1982).

### DISCUSSION

This court defers to the factual findings of the district court unless clearly erroneous, but questions of application of the law to those facts are reviewed *de novo*. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir.1984) (en banc), *cert. denied*, ── U.S. ──, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The legal questions raised in this appeal are whether the warrantless entry was supported by both probable cause and exigent circumstances; whether the district court erred in refusing to hold a *Franks* hearing on the accuracy of the warrant application; and finally, whether, if the original entry was illegal, the information obtained tainted the later warrant.

### I. PROBABLE CAUSE

■ A warrantless search of a home is illegal unless the officers had probable cause *and* were faced with exigent circumstances. *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971).

■ Wulferdinger argues the agents lacked probable cause to search the 418 Yorkshire residence because the officers believed the cocaine had been brought into the house by Riveira, and therefore, had no reason to think that the house was more than a meeting place. Further, he argues that the cocaine could not have been in 418 Yorkshire before Riveira got there because Jackson produced the cocaine only after making a second trip to 418 Yorkshire once Riveira had arrived.

We reject this reasoning. Only officer Mackey stated a belief that Riveira was the source of the cocaine. Johnson, the supervising officer, ordered Riveira stopped because he believed Riveira was "either a cocaine supplier, a person removing evidence, or was a person who lived at 418 Yorkshire Way." The search of Riveira's car produced only a small amount of cash and cocaine, and no "scales, other weighing devices, or narcotics packaging material." Johnson therefore believed that cocaine and those items connected with the distribution of cocaine were present inside the residence. The officers also knew that Jackson sometimes referred to his source in the plural ("his people"), indicating that others besides Riveira might be involved and that Jackson had stated he was expected to return to the house with the money within an hour. There was no error in the district court's finding of probable cause.

### II. EXIGENT CIRCUMSTANCES

■ Wulferdinger argues no exigent circumstances existed to justify a warrantless search because nothing suggested that contraband was in the house, and nothing suggested that the occupants of the house might soon destroy evidence or contraband.

### A. DESTRUCTION OF CONTRABAND

Wulferdinger argues that after Riveira departed and the promised amount of cocaine had been delivered to agent Beren by Jackson, the officers had no reason to believe that any contraband remained within the house. As discussed earlier, the offi-

cers had probable cause to suspect that the house's occupants were involved in the transaction, and that they, as well as Riveira, may have been the source of the cocaine or the brains behind the operation. Moreover, the officers had probable cause to believe that evidence (scales, log books, packaging equipment) was located in the house, especially after Riveira was stopped and no paraphenalia was found in his possession. Finally, Jackson's statements that he was due back at the house and owed the people in the house money clearly indicated the probable involvement of those inside, which in turn bolstered the likelihood that evidence or additional drugs would be located within the house.

The probable presence of contraband does not itself create exigent circumstances. But several facts, taken together, gave the officers probable cause to believe the occupants might destroy evidence before a search warrant was obtained. First, Jackson was due back at the house within an hour of the time he left for the Holiday Inn, and was expected to return with $13,-500. His failure to return might cause those inside to dispose of any evidence. Second, Officer Johnson stated it was common practice for drug dealers to place the courier under surveillance, so that if he is arrested, the principals will be able to destroy or hide evidence before the police arrive. Moreover, the arrest was made in public, and there were several onlookers, any one of whom might have reported the arrest to the occupants of the house. Third, when the officers arrived at the house and identified themselves to the occupant who peered through the window, he ran to the rear of the house instead of coming to the door. From this, the officers had reason to believe that the occupants would destroy evidence or contraband.

This case is similar to *United States v. Kunkler*, 679 F.2d 187 (9th Cir.1982), in which the court found exigent circumstances because an associate of Kunkler had made several trips to Kunkler's home before selling cocaine, the associate was arrested, and Kunkler was observed looking up and down the street nervously. *Id.* at

190. Wulferdinger attempts to distinguish the case on the ground that the occupants of 418 Yorkshire, unlike Kunkler, had not been the subject of investigation, and exhibited no nervous behavior. The first distinction is irrelevant: the officers in this case had probable cause to believe the occupants were involved in the cocaine transaction. The second distinction is untrue: the man who peered through the window ran to the rear of the house upon seeing a uniformed officer. The uniformed officer heard Wulferdinger shout as he ran, "The cops are here." Another detective identified himself to a person in the side yard who had come from the rear of the house after hearing the officers knock. The individual immediately ran. The occupants were clearly nervous before the door was broken.

Similarly, in *United States v. Hicks*, 752 F.2d 379 (9th Cir.1985), the court found exigent circumstances in a case where the defendant's daughter had been arrested for sale of cocaine, and the defendant was "leaving hurriedly" when the officers arrived. *Id.* at 384. Wulferdinger attempts to distinguish *Hicks* on the ground that the officers in *Hicks* had been told that defendant's daughter had eleven kilos of cocaine for sale, but delivered only ten, and therefore the police had reason to believe there was another kilo in the house. This distinction goes not to exigent circumstances, but to probable cause. Moreover, the officers here had probable cause to believe that evidence and contraband were possibly located in the house.

**B. TELEPHONIC WARRANT**

Under Cal.Penal Code §§ 1526 and 1528 (West 1982), law enforcement officers are authorized to obtain telephonic warrants. We are troubled by the routine refusal to implement a telephonic warrant procedure in San Mateo County. Defense counsel's comment at oral argument that all it takes for a telephonic warrant is twenty cents, a judge's name and probable cause, ignores the requirement, however, that the statement must be recorded by some means;

But it is nevertheless close enough to the mark to cause us grave concern. While the statutory authority for the procedure is permissive only, ("the magistrate may take an oral statement under oath which shall be recorded and transcribed," Cal.Penal Code § 1526(b) (West 1982)), the intent of the provision is thwarted when a county refuses to facilitate the procedure. In this case, Officer Johnson stated that San Mateo County "does not have the facilities or equipment necessary to utilize what is commonly known as a telephonic search warrant."

The telephonic warrant procedure was enacted in California in 1970, and in *People v. Morrongiello*, 145 Cal.App.3d 1, 193 Cal. Rptr. 105 (1983), the court explained its view of the procedure.

The use of such warrants should be encouraged where the alternative would be a warrantless search. The "telephonic" procedure makes possible the protection of essential Fourth Amendment rights while meeting the needs of the police to prevent the destruction or removal of evidence. Furthermore, the availability of the "telephonic" search warrant significantly reduces the circumstances in which a warrantless search can be justified by the exceptions for exigent circumstances.

*Id.* 145 Cal.App.3d at 12–13, 193 Cal.Rptr. at 111.

We also note that San Mateo County cannot justify a failure to use the telephonic warrant procedure on the ground that it lacks equipment to record the oral statements of law enforcement officers. Section 1526(b) specifically provides that if electronic recordings are not made, in the alternative, "the sworn oral statement shall be recorded by a certified court reporter."

However, even had the procedure been in place, we hold the exigency was extreme enough that there was no time to obtain a warrant. In the absence of electronic recording equipment, the time it would have taken to locate a magistrate and a court reporter late at night to hear and record the officer's sworn statement was exces-

sive given the reasonable concerns that someone might tip off the Yorkshire Way residents about Jackson's arrest. *See, United States v. Manfredi*, 722 F.2d 519, 523 (9th Cir.1983) (evaluating time constraints involved in obtaining a telephonic warrant under Fed.R.Crim.P. 41(c)(2): "it is evident that the time required, however short, was not available.").

### III. FRANKS HEARING

 Wulferdinger argues that under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the district court should have held a hearing to determine whether the search warrant was invalid because the affidavit provided to the magistrate issuing the warrant was misleading in that it made no mention of Riveira. The district court may refuse to hold a *Franks* hearing if the alleged omission or misstatement is not necessary to the finding of probable cause. *United States v. Stanert*, 762 F.2d 775, 780–81 (9th Cir.1985). This court reviews the district court's denial *de novo*. *United States v. Ritter*, 752 F.2d 435, 439 (9th Cir.1985). Because no paraphernalia was found on Riveira, the omission of Riveira's arrival shortly before Jackson left with the cocaine did not require a *Franks* hearing. The finding of probable cause to search the house might well have been strengthened had the magistrate known that a drug transaction occurred in the house and that the person believed to have delivered the cocaine was arrested shortly after leaving and found to have none of the usual accoutrements of such a transaction.

### IV. TAINT OF SUBSEQUENT WARRANT

Because we hold that the warrantless entry was legal because the officers had probable cause and there were exigent circumstances, we need not reach the question of whether the subsequently obtained warrant was tainted. We merely note that probable cause for a warrant existed independently of information gained after the original entry into the Yorkshire Way resi-

dence. *Sequra v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

AFFIRMED.