**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ramon P. TARAZON, Defendant–Appellant.**

**No. 92–10204.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 5, 1993.[*]

Decided March 17, 1993.

Sandra Lynn Slaton, Paradise Valley, AZ, for defendant-appellant.

Vincent Q. Kirby, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: FARRIS, POOLE, and WIGGINS, Circuit Judges.

POOLE, Circuit Judge:

Appellant Ramon P. Tarazon appeals his conviction following jury trial for possession of a narcotic substance with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii). Tarazon argues that: (1) the district court erred in denying his motion to suppress, (2) the prosecutor made an improper reference to his not testifying at trial, and (3) the district court erred in admitting a pistol in evidence. We reject these arguments and affirm.

## I.

On August 28, 1991, officers of the Drug Enforcement Administration (DEA), working in conjunction with the Bureau of Alcohol, Tobacco and Firearms (ATF), obtained a federal search warrant for a location in Phoenix, Arizona. During the execution of this warrant, the target of the search warrant agreed to cooperate with the law enforcement officials and provided them with the whereabouts of a second individual, later identified as Ken White, a cocaine dealer.

Based on the target's information, the officials went to Hermosa Park in South Phoenix. At approximately 10:00 p.m., they encountered White. The officials detained White, searched the immediate area and located 10 one ounce packages of cocaine in a nearby trash can. The officials also found a 9 millimeter handgun and approximately $450.00 in cash in White's vehi-

cle. White admitted to the officials that the cocaine was his and that he was at the park for the purposes of selling it. The officials then obtained White's agreement to lead them to his supplier.

At approximately 10:30 p.m., White agreed to make a telephone call to Aspon Auto Service, located at 6443 South Central Avenue in Phoenix, and spoke to Tarazon. White advised Tarazon that he needed one-half kilogram of cocaine and subsequently told the officials that Tarazon told him that he could come and pick it up. White told the officials that he had purchased drugs at this establishment approximately three times in the past.

At approximately 11:00 p.m., White and the officials arrived at the establishment. White was met and admitted in by Tarazon. White and Tarazon, in the presence of Angel Serna, Tarazon's uncle, negotiated a price of $8,500.00, and Tarazon then took a bag of cocaine out from behind the front desk and showed it to White. White told Tarazon that he would return with the money. This transaction took three to four minutes.

After White left, he reported what had occurred to the officials and conferred with them regarding what action to take. White explained to the officials that Tarazon and Serna could become suspicious of any delay because White usually had his money with him. At least one official, ATF Agent Williamson, felt that delay could result in Tarazon's and Serna's leaving or destroying the cocaine. The officials decided to make a warrantless entry into the establishment. The officials made their entry at approximately 11:40 p.m.

The officials found Tarazon and Serna present in the establishment. The officials placed Serna and Tarazon on the floor and performed a warrantless search of the front desk. The officials discovered a sack in the bottom drawer of the desk containing cocaine. The officials discovered a loaded .25 caliber pistol in another drawer.

After being arrested and Mirandized, Tarazon told the officials that he owned the pistol, indicating that he kept it in the station based on concerns about robberies in the area. Tarazon also told the officials that the cocaine belonged to Serna, who did not speak English, and that he served as Serna's translator for drug transactions. Tarazon further told the officials that Serna had a supplier who delivered approximately one-half kilogram of cocaine per day.

Tarazon exercised his right not to testify at his trial. During closing argument, the prosecutor made the following comment: "Unless someone wants to get up here and say I didn't know to distribute cocaine is against the law, and you assist your uncle in negotiating a drug transaction it is intentionally aiding someone in committing a drug offense."

## II.

### A. Denial of the Motion to Suppress

Tarazon argues that all evidence obtained as a result of the warrantless entry, arrest and search should have been suppressed because: (1) there was no probable cause to arrest him or search the establishment; (2) there were no exigent circumstances sufficient to support a warrantless arrest or search; and (3) the scope of the search exceeded its constitutional justification. We review the district court's determination of the legality of an arrest or search *de novo*. *See United States v. Lai*, 944 F.2d 1434, 1441 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992). We review the district court's underlying factual findings for clear error. *Id.*

### 1. Probable Cause

■ The officials' determination of probable cause was based on White's information. In reaffirming the totality-of-the-circumstances [1] analysis that has traditionally

---

**1.** *Gates* rejected the two prong test apparently required by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21

L.Ed.2d 637 (1969). *Gates* made clear that a determination of probable cause does not turn on (1) the basis of the informant's knowledge

applied to probable cause determinations based on information obtained from an informant, the Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) held that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. Informant's tips doubtless come in many shapes and sizes from many different types of persons." *Id.* at 232, 103 S.Ct. at 2329. The Court noted that even if an informant does not disclose the basis for his information, police corroboration or the surrounding circumstances can support a determination of the informant's reliability. *Id.* at 242–46, 103 S.Ct. at 2334–36. In applying *Gates,* this court has found that an admission against an informant's penal interest is a corroborating detail. "Admissions of crimes ... carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Estrada,* 733 F.2d 683, 686 (9th Cir.), *cert. denied,* 469 U.S. 850, 105 S.Ct. 168, 83 L.Ed.2d 103 (1984) *(citing United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971)).

■ White provided information sufficient to support the officials' determination[2] of probable cause. White admitted that he was a cocaine dealer, an admission against his penal interest. White further acted against his penal interest by calling his alleged supplier and agreeing to arrange a drug transaction in the officials' presence. Finally, as the district court found, the officials were able to corroborate White's information by listening to him talk to his supplier and following him to his supplier's establishment. Therefore, the totality of the circumstances shows that White's information was reliable and that the officials properly determined they had probable cause to arrest Tarazon and search the establishment. White's information indicated that the persons in the

establishment were drug suppliers and that there would be drugs on the premises.

### 2. Exigent Circumstances

■ The existence of probable cause does not eliminate the need for a warrant absent exigent circumstances. *See United States v. Suarez,* 902 F.2d 1466, 1467 (9th Cir.1990). The government bears the burden of showing the existence of exigent circumstances by particularized evidence. *Id.* at 1468, *citing United States v. Alvarez,* 810 F.2d 879, 881 (9th Cir.1987). Mere speculation regarding the presence of drugs on a premises and the danger of their destruction is not sufficient to show exigent circumstances. *Suarez,* 902 F.2d at 1468. The officials must have had a reasonable belief that exigent circumstances existed. *Id.* Furthermore, the presence of exigent circumstances necessarily implies that there is insufficient time to obtain a warrant; therefore, the government must show that a warrant could not have been obtained in time. *Lai,* 944 F.2d at 1441 (citations omitted).

■ The officials' determination of exigent circumstances was also based on information obtained from White. White told the police that he usually operated with his supplier on a "cash in hand" basis and that they would become suspicious if he did not return soon to make his purchase. This court has held several times that irregularities in drug transactions which could cause a supplier to suspect police action and destroy evidence or prepare to defend a residence are sufficient to constitute exigent circumstances. *See Lai,* 944 F.2d at 1442; *United States v. Lindsey,* 877 F.2d 777, 781 (9th Cir.1989); *United States v. Perdomo,* 800 F.2d 916, 918 (9th Cir.1986); *United States v. Wulferdinger,* 782 F.2d 1473, 1476 (9th Cir.1986); *United States v. Hicks,* 752 F.2d 379, 384 (9th Cir.1985); *United States v. Kunkler,* 679 F.2d 187, 190 (9th Cir.1982). There-

and (2) the veracity of the informant. 462 U.S. at 232, 103 S.Ct. at 2329.

**2.** While *Gates* concerned a magistrate's determination of probable cause based on the totality of

the circumstances, law enforcement officials' determinations of probable cause and exigent circumstances are adjudged under the same standard. *See Lai,* 944 F.2d at 1441.

fore, White's information about the ordinary manner of his drug transactions with his supplier was properly considered by the officials in determining whether exigent circumstances existed.

■ Tarazon argues that the circumstances in this case were not truly exigent but were the result of the officials' failure to seek a warrant earlier. *See Alvarez*, 810 F.2d at 882. While the officials arguably had probable cause under *Gates* before they followed White to the establishment and had him arrange the transaction which gave rise to the exigent circumstances, they were not required to rely solely on White's representations regarding the identity and whereabouts of his supplier. It was reasonable for the officials to corroborate White's tip. *See United States v. Manfredi*, 722 F.2d 519, 523 (9th Cir.1983). In *Lai*, the court noted that the law enforcement officers may have had sufficient evidence to support probable cause before the exigent circumstances arose, but deferred to the police officers' desire to obtain more evidence. 944 F.2d at 1441. The record in this case similarly shows that the officials believed they had probable cause only *after* going to the establishment. There is no basis for finding that the officials created exigent circumstances as a means of obviating the need for obtaining a warrant..

■ Whether the officials' belief of exigent circumstances was reasonable depends on whether the 30 minutes between White's leaving the establishment and their entry was sufficient time to obtain a telephonic warrant under Federal Rule of Criminal Procedure 41(c)(2).[3] *See Alvarez*, 810 F.2d at 882, *quoting Manfredi*, 722 F.2d at 522. The officials sought advice from the U.S. Attorney's Office but did not attempt to obtain a telephonic warrant, and

there is no record of the length of time required to obtain a telephonic search warrant. Failing to make a good faith attempt to obtain a telephonic warrant or to present evidence showing that a telephonic warrant was unavailable ordinarily requires suppression. *See Alvarez*, 810 F.2d at 881–84. However, the government argues that the 30 minutes available in this case was obviously insufficient time to obtain even a telephonic warrant and that, although no showing of good faith or unavailability was made, "it is evident that the time required, however short, was not available." *Manfredi*, 722 F.2d at 523.

■ *United States v. Andersson*, 813 F.2d 1450 (9th Cir.1987), is controlling on this point. In *Andersson* the court, citing both *Manfredi* and *Alvarez*, held that the time required to obtain a telephonic warrant was not available. *Id.* at 1455. *Andersson* involved circumstances similar to those in this case: the government learned of the location of narcotics after midnight from an informant who negotiated a drug transaction with his suppliers, giving rise to concerns about the destruction of evidence unless a quick response was made. *Id.* *Andersson* also was a case in which the government did not introduce evidence regarding the time required to obtain a telephonic warrant. *Id.* Furthermore, there was more time available in *Andersson*, about one hour, than in this case. *Id.* Thus, *Andersson* dictates that the officials in this case had a reasonable belief that exigent circumstances existed.

### 3. Scope of the Search

■ Because exigent circumstances existed, the officials were justified in entering the establishment and arresting Tarazon. *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639

---

**3.** Rule 41(c)(2)(A) states that "[i]f the circumstances make it reasonable to dispense with a written affidavit, a Federal magistrate may issue a warrant based upon sworn oral testimony communicated by telephone or other appropriate means."

Obtaining a telephonic warrant is not an easy task. *See Manfredi*, 722 F.2d at 523; *United States v. Good*, 780 F.2d 773, 775 (9th Cir.), *cert.*

*denied*, 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 920 (1986). Specifically, Rule 41(c)(2) requires a person requesting a telephonic warrant to: (1) prepare a duplicate original warrant; (2) read the duplicate original to the magistrate verbatim; (3) sign the federal magistrate's name on the duplicate original warrant; and (4) enter the exact time of execution on the duplicate original warrant.

(1980); *United States v. Al–Azzawy,* 784 F.2d 890, 895 (9th Cir.), *cert. denied,* 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986). Of course, the officials also had the right to perform a search incident to Tarazon's arrest. *See Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *Andersson,* 813 F.2d at 1456. "A police officer may, incident to a lawful arrest, conduct a contemporaneous warrantless search of the arrestee's person and of the area into which the arrestee might reach to retrieve a weapon or destroy evidence." *Id.* at 1455 (citations and internal quotations omitted).

■ In evaluating the propriety of a search incident to arrest, this court recently adopted the following two prong test: (1) was the item to be searched within the arrestee's custody and control; and (2) did the events following the arrest make the search unreasonable. *See United States v. Turner,* 926 F.2d 883, 887–88 (9th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991) (*quoting United States v. Fleming,* 677 F.2d 602, 607 (7th Cir.1982)). *Turner* addressed the issue whether a search of a room from which the arrestee was removed which was performed while the arrestee was handcuffed was constitutional. *Id.* at 887. Applying the two level inquiry that it adopted from *Fleming,* the court found that the area searched was within the arrestee's control when he was arrested. *Id.* at 888. The court also found that it was not unreasonable for the officers to incur a short delay, handcuff the arrestee and remove him to a another room before performing the search. *Id. Turner* limited its holding to situations in which only a short delay occurs and where the arrestee is not far removed from the area searched. *Id.* at 888 n. 2.

■ The officials believed the front desk could contain destructible evidence,

see *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040, and the search incident to the arrest in this case clearly comports with the *Turner* test. First, the officials searched the drawers of the desk Tarazon and Serna were sitting behind when they were arrested. The desk drawers were clearly within Tarazon's and Serna's control at the time they were arrested. Second, Tarazon and Serna were placed on the floor[4] near the front desk, and the search occurred only moments after the arrest. Therefore, the district court properly denied the motion to suppress.[5]

**B. Prosecutor's Statement During Closing Argument**

■ Tarazon argues that the prosecutor's impermissible reference to his exercise of his right not to testify at trial requires reversal. However, Tarazon made no contemporaneous objection to the prosecutor's comment. An alleged error raised for the first time on appeal is reviewed for plain error. *United States v. Gomez–Norena,* 908 F.2d 497, 500 (9th Cir.), *cert. denied,* 111 S.Ct. 363 (1990). To merit reversal, such an error must affect a criminal defendant's substantial rights. Federal Rule of Criminal Procedure 52(b). Reversal based on plain error is exceptional and occurs only when necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process. *United States v. Kennedy,* 714 F.2d 968, 977 (9th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984) (citations omitted).

■ A prosecutor's comment regarding a defendant's failure to testify at trial violates the Fifth Amendment. *Griffin v. United States,* 380 U.S. 609, 611–12, 85 S.Ct. 1229, 1231–32, 14 L.Ed.2d 106 (1965). A prosecutor's comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify or is of

---

**4.** The record does not show whether Tarazon and Serna were handcuffed or not, but, according to *Turner,* this fact is of no significance.

**5.** Because the search of the front desk was proper as a search incident to arrest, there is no need to determine whether it was a proper complete search. The officials may not have been justified in performing a complete search when they could have simply secured the premises and obtained a search warrant. *See Lai,* 944 F.2d at 1442–43 n. 4 (citations omitted).

such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. *United States v. Bagley,* 772 F.2d 482, 494 (9th Cir.1985), *cert. denied,* 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326; *United States v. Soulard,* 730 F.2d 1292, 1306 (9th Cir. 1984).

■ This court has set forth various criteria for determining whether a prosecutor's impermissible comment regarding a defendant's failure to testify requires reversal. Prosecutorial comment on the defendant's failure to testify mandates reversal where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for conviction, and where the evidence could have supported acquittal. *Kennedy,* 714 F.2d at 976. Moreover, reversal is only required if the comment could have affected the verdict. *United States v. Pruitt,* 719 F.2d 975, 978 (9th Cir.) (per curiam), *cert. denied,* 464 U.S. 1012, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983). We will not reverse when a prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as the basis of conviction, and is followed by a curative instruction. *Soulard,* 730 F.2d at 1307; *Kennedy,* 714 F.2d at 976.

■ The prosecutor's comment, taken in its full context, was as follows:

Now, there's a sort of a little flip side to this under the aiding and abetting. You can also, these are separate offenses—aiding and abetting and conspiracy, and there is aiding and abetting this possession.

First, you have to find there was possession with the intent to distribute by someone, well in that particular room, its either Angel Serna or Ramon Tarazon. The second thing you need to find is the defendant knowingly and intentionally aided, abetted, counseled, etc., another to commit possession with the intent to distribute cocaine.

Now if we take the defendant's statement as to what happened that night as really what happened, then had he not assisted his uncle in conducting the transaction it could not have occurred because of the language barrier.

And the defendant must have known that, because he agreed to make the translation, by his own statement.

And that defendant acted prior to the crime being completed, well the only reason that the sale didn't go through, as I mentioned before, was lack of money. But they offered to make the sale. It was already made prior to the officials returning and finding the half-kilo of cocaine in the desk drawer.

And we must show, and you must find, that the defendant acted with the knowledge and intention of helping another commit the crime.

*Unless someone wants to get up here and say, I didn't know to distribute cocaine is against the law, and you assist your uncle in negotiating the drug offense in negotiating a drug transaction, it is intentionally aiding someone in committing a drug offense.*

The prosecutor's comment suggested to the jury that Tarazon's failure to testify that he acted unintentionally showed that he acted intentionally in committing the crime of which he was ultimately convicted. This case, while not involving as blatant or repeated references to the defendant's failure to testify, is akin to *Lincoln v. Sunn,* 807 F.2d 805, 809–11 (9th Cir.1987), in terms of the tenor of the prosecutor's comment.[6] As in *Lincoln,* the comment in this case was intended to create an inference between the defendant's failure to testify and his resultant guilt. Unlike *Lincoln,* the comment in this case was not followed by a curative instruction, potentially making it more prejudicial. The prosecutor's

---

**6.** The government relies on cases in which the prosecutor's comment: (1) was either much more ambiguous and went more to the general lack of exculpatory evidence than the defendant's failure to testify, or (2) were made in response to a defendant's explanation regarding his failure to testify. *See Soulard,* 730 F.2d at 1306–07; *Bagley,* 772 F.2d at 494; *Kennedy,* 714 F.2d at 977; *United States v. Armstrong,* 654 F.2d 1328, 1330–31 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982).

comment violated Tarazon's rights under the Fifth Amendment.

However, not all constitutional violations constitute plain error and require reversal. *See United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir.1991) (involving impermissible prosecutorial vouching for witnesses). Tarazon did not object, and the singular, somewhat ambiguous comment does not constitute a miscarriage of justice or an affront to the integrity of the judicial process. "Under these circumstances, any prejudice to the defendant was minimal and could have been further reduced had appellant brought to the trial judge's attention the possibility of a curative instruction." *Kennedy*, 714 F.2d at 977. Thus, the prosecutor's impermissible comment does not require reversal.

## C. Admission of the Pistol at Trial

Tarazon argues that the pistol discovered during the search of the front desk was inadmissible under Federal Rules of Evidence 401 and 403. To the extent that Tarazon contends that the pistol should have been excluded on relevance grounds, we review this issue for an abuse of discretion. To the extent that he contends that the pistol should have been excluded on prejudice grounds, an issue not raised at trial, we review this issue for plain error. *United States v. Crispo De Llano*, 830 F.2d 1532, 1544 (9th Cir.1987), *modified*, 838 F.2d 1006 (1988); *United States v. Gomez–Norena*, 908 F.2d 497, 500 (9th Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990).

The district court did not err in admitting the pistol as evidence relating to Tarazon's charges. "It may reasonably be inferred that an armed possessor of drugs has something more in mind than mere personal use. Thus guns seized from a defendant's residence are admissible in a trial for possession of a controlled substance with intent to distribute." *United States v. Savinovich*, 845 F.2d 834, 837 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988) (citations and internal quotes omitted); *Crispo De Llano*, 830 F.2d at 1544. While the admission of a firearm is improper where the firearm does not relate to any charges against the defendant, *see Green v. United States*, 648 F.2d 587, 595 (9th Cir.1981), the pistol in this case was relevant to the possession charges against Tarazon. Tarazon's objections, both on relevance and prejudice grounds, afford him no relief.

The judgment of the district court is AFFIRMED.

WIGGINS, Circuit Judge, specially concurring:

I write separately to express my disapproval of this court's decision in *United States v. Turner*, 926 F.2d 883 (9th Cir. 1991), which, to my mind, unnecessarily and illegitimately expanded the search incident to arrest exception to the Fourth Amendment's warrant requirement.

The search incident to arrest exception to the warrant requirement was enunciated in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In *Chimel*, the Supreme Court specifically stated:

> [I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested.

*Id.* at 763, 89 S.Ct. at 2040. The *Chimel* exception primarily is justified by two concerns—officer safety and preservation of evidence.

*Turner*, however, expanded the search incident to arrest exception beyond the logical boundaries of the rationale of *Chimel*. Specifically, the *Turner* court upheld as a valid search incident to arrest the search of the defendant's bedroom *after* the defendant had been arrested, handcuffed, and removed from the room.

Adopting a two pronged test first enunciated in *United States v. Fleming*, 677 F.2d

602 (7th Cir.1982),[1] the *Turner* court first inquired into whether the searched area was within the arrestee's immediate control *when he was arrested. Turner*, 926 F.2d at 887. Because Turner was on the bed with the baggies of cocaine when arrested, the court had little difficulty in concluding that it was. The *Turner* court second inquired into whether events occurring after the arrest but before the search made the search unreasonable. Because of the concern for officer safety, the court concluded that they had not.

> The officers handcuffed Turner and took him into the next room out of a concern for safety. We cannot say that these concerns were unfounded, for they had already discovered a concealed weapon beneath the bedding. They did not take him far away or delay for long before conducting the search. Under the circumstances, we cannot find the search that revealed the baggies of cocaine inconsistent with *Chimel*....

*Id.* at 888.

*Chimel*, however, specifically indicated that the availability and scope of a search incident to arrest should not be expanded beyond the reasons for allowing it. *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040. Because neither of the concerns motivating *Chimel*—officer safety and preservation of evidence—are present once a defendant has been arrested, handcuffed, and removed from the room subsequently searched, it seems clear that *Turner* did just that. Although I share Justice Scalia's doubts regarding the validity of the "general rule" that a warrant is always required under the Fourth Amendment, *see California v. Acevedo*, —— U.S. ——, ——, 111 S.Ct. 1982, 1993, 114 L.Ed.2d 619 (1991) (Scalia, J., concurring), so long as that "general rule" is the law, where there is no danger either to the arresting officers or to the evidence in waiting for a search warrant, then the arresting officers should be required to do so.

I therefore recommend that *Turner* be overruled. Until that time, however, because we are bound by *Turner* and because, as the opinion points out, this case squarely fits within the two pronged test there adopted, and may even be valid under *Chimel*, I concur in the conclusion that the search of the desk incident to the arrest of Mr. Tarazon was valid.

---

1. In *Fleming*, the Seventh Circuit permitted a search incident to arrest to include the search of paper bag the defendant was carrying at the time of arrest even though the search occurred after the defendant had been handcuffed.